## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY WILLIAMS,** | : | |
| **Plaintiff** | : | **CIVIL NO. 1:13-CV-00849** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **LACAKWANNA COUNTY PRISON, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

The instant civil rights complaint was filed pro se by Gary Williams, an inmate at the

Lackawanna County Prison ("LCP"), pursuant to 42 U.S.C. § 1983.  (Doc. No. 1.)  Currently

pending before the court are Defendants' motion to dismiss (Doc. No. 14), Plaintiff's motion for

leave to file a supplemental complaint (Doc. No. 33), and Plaintiff's motion for joinder (Doc.

No. 35).  For the reasons set forth below, Defendants' motion will be granted in part, Plaintiff's

motion for leave to file a supplemental complaint will be granted, and Plaintiff's motion for

joinder will be denied.


## I.    Background

Plaintiff claims that prison officials at LCP have opened his legal mail outside of his

presence on several occasions.  (Doc. No. 1 at 1.)  He alleges that on December 5, 2012, he

received a piece of opened legal mail from Defendant Officer Laboronti for the fourth time in

three weeks.  (Id.)  All letters were sent from the U.S. District Court and two of the envelopes

were marked "Special Mail, Not to Be Opened Outside the Presence of the Inmate."  (Id.)

Plaintiff claims he spoke about this with Defendant Warden Hebron, who said that Laboronti

should not have opened the mail outside of Plaintiff's presence.  (Id.)  Plaintiff also claims he

filed three grievances about this issue and that he received no response to any of them.  (Id. at 2.)

According to Plaintiff, the legal mail opened by Laboronti was related to a separate lawsuit Plaintiff had filed against Defendant McMillan, and "may have been [Laboranti's] attempt to prejudice" that lawsuit.  (Id.)

On May 20, 2013, Defendants filed a motion to dismiss the complaint for failure to state a claim.  (Doc. No. 14.)  Rather than filing a brief in opposition to this motion, Plaintiff filed a "supplemental complaint" containing an affidavit by another inmate attesting to the LCP's practices of opening legal mail.  (See Doc. No. 25 at 2–3.)  On November 8, 2013, this court ordered the supplemental complaint stricken from the record because Plaintiff never moved for leave to file the supplemental complaint and the filing did not conform to the requirements for a supplemental complaint.  (Doc. No. 26.)  In that order, this court also granted Plaintiff's motion to correct certain errors in his complaint and issued a new briefing schedule for Defendants' motion to dismiss the complaint.  (Id.)

Rather than filing a brief in opposition to Defendants' motion to dismiss, Plaintiff next filed a declaration for entry of default judgment against Defendants for their failure to respond to his supplemental complaint.  (See Doc. No. 32.)  This court later quashed that declaration.  (Id.)  On September 5, 2014, this court directed Plaintiff to file a brief in opposition to Defendants' motion to dismiss and notified Plaintiff that a failure to do so would result in the motion being deemed unopposed pursuant to Local Rule 7.6.  (Doc. No. 30.)  This court later gave Plaintiff an extension to file his brief in opposition.  (Doc. No. 32.)

Plaintiff again decided against filing a brief in opposition to Defendants' motion to dismiss, and instead filed another motion to supplement the complaint and a motion for joinder. (Doc. Nos. 33, 35.)  For the reasons set forth below, these motions will be denied and

Defendants' motion to dismiss will be granted.

## II.     Legal Standard

### A.     Motion to Dismiss

A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Fair notice" in the context of Rule 8 "depends on the type of case—some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted).  "[A] situation may arise where . . . the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  Id.  A plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555) (recognizing that Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); see also Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (stating that the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations omitted).

A defendant may attack a complaint by a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  In deciding a motion to dismiss under

Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, Erickson v. Pardus, 551 U.S. 89, 93 (2007), and all reasonable inferences permitted by the factual allegations, Watson v. Abington Twp., 478 F.3d 144, 150 (3d Cir. 2007), and view them in the light most favorable to the plaintiff, Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007).  If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss.  Iqbal, 556 U.S. at 663 (citing Twombly, 550 U.S. at 555, 570) (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); see also Phillips, 515 F.3d at 234; Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007); Stevenson v. Carroll, 495 F.3d 62, 66 (3d Cir. 2007).  When a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 664.  However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. at 678 (quoting Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Id.

When presented with a pro se complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003); Youse v. Carlucci, 867 F. Supp. 317, 318 (E.D. Pa. 1994).  Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson, 551 U.S. at 94 (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

4

**B.     Supplemental Pleadings**

A district court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented" even in situations where "the original pleading is defective in stating a claim." Fed. R. Civ. P. 15(d).  A determination of whether to grant leave to file a supplemental pleading is left to the sound discretion of the district court.  Owens-Illinois, Inc. v. Lake Sore Land Co., Inc., 610 F.2d 1185, 1188–89 (3d Cir. 1979); see also Crosby v. Piazza, 465 F. App'x 168, 174 (3d Cir. 2012).

In determining whether to grant leave to file a supplemental pleading, district courts should apply a similar standard as that used in determining whether to grant leave to amend. See Wallace v. Abell, 318 F. App'x 96, 99 (3d Cir. 2009); see also 6A Charles Alan Wright, et al., Federal Practice & Procedure § 1504 (3d ed. 2015) (noting that the discretion exercised by the court is "similar" to that exercised in deciding whether to grant leave to amend).  Thus, leave to supplement a pleading should generally be granted unless "equitable considerations render it otherwise unjust."  Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  Equitable considerations that may justify refusal of leave to supplement include "undue delay, bad faith, and futility."  Id.  Finally, a supplemental complaint filed by a prisoner proceeding in forma pauperis is subject to the screening standards of the Prison Litigation Reform Act ("PLRA") in the same manner as an original complaint.  See 28 U.S.C. §§ 1915A, 1915(e)(2); see also Stringer v. Bureau of Prisons, 145 F. App'x 751 (3d Cir. 2005) (affirming sua sponte dismissal of supplemental complaint along with original complaint).

### III.   Discussion

It is unclear whether Plaintiff intended to file his motion for leave to file a supplemental complaint as a response to Defendants' motion to dismiss.  While Plaintiff's motion was filed within the final deadline given by this court for Plaintiff to file a brief in opposition, the motion makes no mention of how the supplemental pleading is intended to cure any alleged defects. (See Doc. No. 33.)  Given this ambiguity, this court will refrain from summarily dismissing Plaintiff's complaint as unopposed, despite this court's earlier order.  (Doc. No. 30.)  Instead, this court will first address the merits of Defendant's motion to dismiss and then proceed to consider whether Plaintiff shall be granted leave to supplement his complaint.  In making these determinations, this court will also take into consideration whether Plaintiff's proposed supplemental complaint could cure any alleged defects in the original complaint.

#### A.   Defendants' Motion to Dismiss

Plaintiff claims that Defendants have violated his right of access to courts and his First Amendment rights by repeatedly opening his legal mail and that Defendants have failed to maintain a "proper and effective grievance system."  (Doc. No. 1 at 3–4.)  Defendants contend that: 1) Plaintiff's allegations regarding interference with his legal mail fail to state a claim because he does not assert any injury resulting from that interference; and 2) Plaintiff's allegations regarding the grievance system fail to state a claim because prisoners have no constitutional right to a grievance system.  This court will address each claim in turn.

#### 1.   Interference with Plaintiff's Legal Mail

A prisoner's ability to receive legal mail without interference – including the threat of interference due to the mail being opened outside of his presence – is protected by two different constitutional rights: the right to free speech under the First Amendment and the right of access to courts. Bieregu v. Reno, 59 F.3d 1445, 1450–56 (3d Cir. 1995), abrogated in part by Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997).[1]  In order to state a claim of this sort under the First Amendment, a prisoner must allege that the interference with his legal mail was done according to a "pattern and practice."  Jones v. Brown, 461 F.3d 353, 359 (3d Cir. 2006) ( "A state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech.").  A prisoner need not allege such a pattern or practice to state an access-to-courts claim, but instead he "must allege actual injury, such as the loss or rejection of a legal claim."  Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997) (citing Lewis v. Casey, 518 U.S. 343, 349 (1996)).

Defendants argue principally that Plaintiff's access-to-courts claim fails because he has not alleged that he suffered any actual injury due to his mail being opened outside of his presence.  (Doc. No. 18 at 7–11.)  This court agrees.  At no point in the complaint does Plaintiff allege that the opening of his legal mail outside of his presence resulted in any actual injury.  (See Doc. No. 1.)  Accordingly, Plaintiff's access-to-courts claim will be dismissed.

Defendants also argue that Plaintiff has not stated a claim that his right to freedom of speech has been violated because he "has not alleged the existence of a blanket policy."  (Doc. No. 18 at 8.)  However, a prisoner may allege that actions were taken pursuant to a pattern or

---

[1] A prisoner's right of access to courts, in turn, stems from multiple constitutional roots.  Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (collecting cases identifying the different sources of the right of access to the courts).

practice without the existence of a "blanket policy."  See, e.g., Jones, 461 F.3d at 359

(distinguishing between a "pattern and practice" and an "explicit policy").  In his original

complaint, Plaintiff alleges that his mail was opened outside of his presence on four separate

occasions within a period of three weeks.  (Doc. No. 1 at 1.)  While this may not qualify as a

"blanket policy," it is sufficient to allege the existence of a pattern and practice of opening legal

mail outside of the presence of the recipient.  See Taylor v. Oney, 196 F. App'x 126 (3d Cir.

2006) (holding that complaint stated a First Amendment claim where plaintiff alleged legal mail

was opened outside of his presence on eight occasions over a four year period).  This is

especially true given the allegations in Plaintiff's proposed supplemental complaint, in which

Plaintiff alleges that his legal mail was opened outside of his presence on several other occasions

after he filed the instant complaint.  See infra, III.B.  Thus, Defendants' motion to dismiss will

be denied as to Plaintiff's First Amendment claim.

### 2.      Prison Grievance System Allegations

Defendants next contend that Plaintiff's allegations concerning LCP's grievance system

fail to state a claim.  (Doc. No. 18 at 11-12.)  Although the filing of a grievance is a

constitutionally protected activity, see Mitchell v. Horn, 318 F.3d 523 (3d Cir. 2003) (noting that

the filing of a grievance is protected by the First Amendment), access to a grievance procedure is

not a constitutional right.  See, e.g., Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007)

(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)) ("Prisoners do not have a

constitutional right to prison grievance procedures.").  Because Plaintiff has no constitutional

right to a prison grievance procedure, his allegations regarding Defendants' management of the

grievance system and handling of individual grievances fail to state a legally cognizable claim.

Thus, Defendants' motion to dismiss will be granted with respect to this claim.[2]

### B.     Plaintiff's Motion for Leave to Supplement the Complaint

Plaintiff seeks to file his supplemental complaint in order to add "new claims surrounding

mail tampering by LCP staff members and claims of retaliation in an attempt to conceal civil

rights violations." (Doc. No. 33 at 1.)  In his proposed supplemental complaint, Plaintiff

presents the following narrative: on June 3, 2013, Officer Seabecher handed Plaintiff five pieces

of legal mail that had been opened outside of Plaintiff's presence and had been withheld since

May 20, 2013.  (Doc. No. 34 at 2.)  Later that day, Plaintiff notified Lieutenant Murray of this

problem, and Murray stated that he would personally look into the matter.  (Id.)  Plaintiff then

filed a grievance about it, but received no response.  (Id.)

On June 27, 2013, Plaintiff was approached by Captain Yavorski, who confirmed receipt

of the grievance and asked him to stop filing grievances about his legal mail being opened

outside of his presence.  (Id.)  Yavorski told Plaintiff that any future complaints about this issue

should be directed to him first.  (Id.)  On June 30, 2013, Plaintiff filed a grievance about

Yavorski's attempt to dissuade him from filing grievances.  (Id.)  Plaintiff received no response

to this grievance.  (Id.)

On July 12, 2013, Plaintiff was handcuffed and escorted to a meeting with Warden

McMillan and Assistant Warden Langan.  (Id.)  McMillan attempted to dissuade Plaintiff from

filing grievances regarding the opening of Plaintiff's legal mail.  (Id.)  Directly after the meeting,

---

[2] This court notes that the alleged failure to respond to grievances may still be relevant for other purposes,
such as rebutting an affirmative defense based on the failure to exhaust administrative remedies.  See,
e.g., Mitchell, 318 F.3d at 529 (3d Cir. 2003).

Plaintiff filed a grievance about McMillan's request that he stop filing grievances, and he received no response.  (Id.)

On August 5, 2013, Officer Cole entered Plaintiff's unit due to an unrelated protest that the inmates were engaged in.[3]  (Id.)  When Plaintiff tried to engage Cole about the issue they were protesting, Cole stated that Plaintiff was a "rat" and that he knew this because he had read Plaintiff's grievances.  (Id.)  Plaintiff replied that he did not tell on other inmates, only corrections officers who violate his civil rights.  (Id. at 2–3.)  Cole then told Plaintiff "to come downstairs and say it."  (Id. at 3.)  After Plaintiff went to his cell and put on his shoes, Cole handcuffed him and escorted him to the restricted housing unit ("RHU").  (Id.)

Cole then issued a misconduct report against Plaintiff that stated he had been destroying property.  (Id.)  At the hearing, Plaintiff denied the charges and stated that Cole entirely fabricated the report.  (Id.)  Plaintiff was found guilty of the charges and sentenced to 154 days in the RHU.  (Id.)

While he was in the Restricted Housing Unit, Cole continued to harass Plaintiff by threatening physical harm on him.  (Id.)  When Cole served Plaintiff food, he stated that he had spit in it.  (Id.)  He also loudly stated that he would kill Plaintiff if Plaintiff was ever released.  (Id.)  While Plaintiff was in the RHU, his legal mail continued to be opened outside of his presence, but Plaintiff ceased filing grievances about it because of Cole's threats.  (Id. at 3–4.)

---

[3] Plaintiff makes several references in his proposed supplemental complaint to problems with the LCP kitchen staff.  (See id. at 2–3.)  Plaintiff does not, however, explicitly set forth any claims regarding the kitchen staff.  (See id. at 5–7.)  Furthermore, though this court has construed Plaintiff's pleadings liberally, the issues with the kitchen staff appear to be entirely unrelated to the claims in Plaintiff's original complaint and would thus be inappropriate for inclusion in a supplemental pleading.

On August 13, 2014, after Plaintiff's release from the RHU, Officer Jervis delivered Plaintiff a piece of legal mail that had already been opened.  (Id. at 4.)  Plaintiff asked Officer Jervis who opened the mail and Jervis admitted that he had opened it.  (Id.)  Jervis stated that he was allowed to open it because it did not explicitly state on the envelope that it could not be opened outside of the recipient's presence.  (Id.)  When Plaintiff explained that it did not have to be marked, Jervis became angry and told Plaintiff to pack his things because he was about to be placed in the RHU.  (Id.)

Jervis then left and Plaintiff requested to speak to a "white shirt."  (Id.)  While he was waiting for one to arrive, Plaintiff's unit was ordered to lock down for a head count.  (Id.)  After the unit was locked down, Plaintiff was handcuffed and led to the RHU.  (Id.)  On his way, Plaintiff passed Sergeant Kennedy and asked him if "they treat[ed] every inmate this way after they complaint of their legal mail being opened outside their presence."  (Id.)  Kennedy only shrugged in response.  (Id.)  Plaintiff then stated that these were retaliatory actions and that he would file a complaint, but Kennedy still did not reply.  (Id.)

On August 19, 2014, Plaintiff was brought before Disciplinary Hearing Officer ("DHO") Fanning.  (Id. at 5.)  Plaintiff does not state what charges were brought against him, but he claims that he denied the charges and that he explained to DHO Fanning that the charges were fabricated in order to cover up ongoing civil rights violations.  (Id.)  Plaintiff also claims that DHO Fanning walked out of the room while he was still presenting his case.  (Id.)  Plaintiff was ultimately found guilty of all charges and sentenced to 77 days in the RHU.

Plaintiff seeks to bring the following claims based on the foregoing facts:

1) that Warden McMillan and Assistant Warden Langan conspired to prevent him from utilizing LCP's grievance system by asking him to informally resolve his complaints regarding the handling of legal mail;

2) that Cpt. Yavorski attempted to persuade Plaintiff to seek the informal resolution of his complaints regarding the handling of legal mail;

3) that Lt. Murray withheld Plaintiff's legal mail without his consent after it had been opened outside of his presence;

4) that DHO Fanning failed to remain impartial during Plaintiff's disciplinary hearing;

5) that Sgt. Kennedy conspired with Officer Jarvis by failing to investigate the opening of Plaintiff's legal mail outside of his presence and by ordering Plaintiff's removal from his unit in retaliation for complaining of the event;

6) that Officer Jarvis opened Plaintiff's legal mail outside of his presence and fabricated a misconduct report to conceal the civil rights violations;

7) that Officer Cole retaliated against Plaintiff for the filing of grievances by threatening to kill and/or harm Plaintiff on multiple occasions;

(Doc. No. 34 at 5–7.)  This court will now examine whether Plaintiff has pleaded sufficient facts sufficient to state each of these claims.

### 1.     Attempts to Dissuade Plaintiff from Filing Grievances

With regard to the first two claims, Plaintiff alleges that Warden McMillan, Assistant Warden Langan, and Cpt. Yavorski requested that he cease filing grievances and instead seek to resolve his complaints informally.  (Doc. No. 34 at 2.)  As discussed above, Plaintiff cannot base

a civil rights claim on the obstruction of his ability to file grievances alone, as he has no constitutional right to a grievance procedure. See, e.g., Heleva, 214 F. App'x at 247. Prisoners do, however, have the right to be secure from retaliation for the filing of grievances. See Mitchell, 318 F.3d at 530. To state a claim of retaliation, a plaintiff must allege: (1) that he or she was engaged in constitutionally protected conduct; (2) that he or she suffered an "adverse action" at the hands of prison officials; and (3) that there is a causal link between the protected activity and the "adverse action." Id. (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)).

To the extent that Plaintiff is attempting to state a claim of retaliation based on these allegations, it also fails. Even if the prison officials in question were seeking to intimidate Plaintiff through these conversations, our circuit court has recognized that "threats alone do not constitute retaliation." Burgos v. Canino, 358 F. App'x 302, 306 (3d Cir. 2009); see also Dunbar v. Barone, 487 F. App'x 721, 723 (3d Cir. 2012) (holding that verbal threats and the repeated use of racist imagery and gestures against an inmate who had been communicating with civil rights organizations did not qualify as an "adverse action"). As Plaintiff does not allege that McMillan, Langan, or Yavorski took any actions against him aside from attempting to persuade him to cease filing grievances, he fails to state a claim of retaliation against them.

### 2. Lt. Murray's Withholding of Legal Mail

Regarding his third claim, Plaintiff alleges that he approached Lt. Sean Murray about some legal mail he received that had been opened outside of his presence and withheld for approximately two weeks before being delivered to him. (Doc. No. 34 at 2.) Notably, Plaintiff

states that it was Officer Seabecher who handed him this mail, not Lt. Murray.[4]  (Id.)  He then

claims that Lt. Murray "said he'd personally look into the matter" and that Plaintiff then filed a

grievance and received no response.  (Id.)  Plaintiff makes no other allegations regarding Lt.

Murray, and offers no basis from which to infer that Lt. Murray was involved with either the

opening or withholding of his legal mail.  Plaintiff cannot rely on a theory of supervisory

liability to support his civil rights claims.  See, e.g., Iqbal, 556 U.S. at 676 ("Because vicarious

liability is inapplicable to Bivens and [Section] 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution.").  Since Plaintiff has not alleged that Lt. Murray had any personal involvement

with the interference with his legal mail, he fails to state a claim against Lt. Murray.

### 3.      DHO Fanning's Bias in Disciplinary Hearing

Plaintiff next claims that DHO Fanning violated his due process rights by failing to

remain impartial during his August 19, 2014 disciplinary hearing and failing to provide him with

a copy of the findings within five days of the hearing.  (Doc. No. 34 at 6.)  Prisoners have a right

to certain procedural protections when they face the loss of a legally cognizable liberty interest.

Wolff v. McDonnell, 418 U.S. 539, 566-67 (1974); see also Barna v. Boyce, 563 F. App'x 103,

105 (3d Cir. 2014).  A punishment that does not directly increase the length of a prisoner's

sentence only implicates a liberty interest if it "imposes atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484

(1995).  Plaintiff claims that he was sentenced to 77 days in the RHU as a result of the

---

[4] Though Plaintiff states that Officer Seabecher handed him the mail, he also does not state that Seabecher
opened it.

disciplinary hearing.  (Doc. No. 34 at 5.)  This punishment does not qualify as an atypical and significant hardship.  See Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (holding that a sanction of seven months in disciplinary confinement does not violate a prisoner's liberty interest).  Because the punishment Plaintiff suffered did not constitute an atypical and significant hardship, he fails to state a claim against DHO Fanning.

### 4.     Sgt. Kennedy's Failure to Investigate

Plaintiff next claims that Sgt. Kennedy failed to properly investigate the August 13, 2014 incident between Plaintiff and Officer Jervis that led to Plaintiff's confinement in the RHU.  (Doc. No. 34 at 6.)  Plaintiff claims that this was done as part of a conspiracy between Sgt. Kennedy and Officer Jervis.  (Id.)  Plaintiff also claims that Kennedy violated his First Amendment rights by ordering his removal from his unit in retaliation for Plaintiff's protestation of his legal mail being opened outside of his presence.  (Id.)

The failure of prison officials to investigate a civil rights violation does not, on its own, constitute a separate civil rights violation.  See Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) (holding that the "rubber stamping" of grievance reports was not a cognizable constitutional violation).  Furthermore, the only factual allegations that Plaintiff makes against Sgt. Kennedy are that Kennedy "shrugged and gave no reply" when Plaintiff asked him questions as he was being led to the RHU.  Even when construed in the light most favorable to Plaintiff, this allegations fails to show the existence of any conspiracy between Sgt. Kennedy and Officer Jervis, and similarly fails to show that Kennedy was involved in Plaintiff's removal to the RHU.  Thus, Plaintiff has failed to state a claim against Sgt. Kennedy.

### 5.      Officer Jervis Opening Plaintiff's Legal Mail and Retaliation

Plaintiff next claims that Officer Jervis violated his civil rights by opening his legal mail outside of his presence.  (Doc. No. 34 at 6-7.)  As explained above, a pattern or practice of opening a prisoner's legal mail outside of his or her presence violates that prisoner's First Amendment rights.  Jones, 461 F.3d at 359.  While Plaintiff only alleges that Jervis did this on one occasion, when the allegations as a whole are viewed in the light most favorable to Plaintiff, this instance could plausibly be part of the same pattern or practice that led to the other instances of his legal mail being opened.  Thus, Plaintiff has successfully stated a claim against Officer Jervis for opening his legal mail outside of his presence.

Plaintiff also claims that Officer Jervis fabricated a misconduct report against him in retaliation for Plaintiff's protesting of the opening of his legal mail outside of his presence. (Doc. No. 34 at 6-7.)  With respect to this claim, Plaintiff states that, when he explained to Officer Jervis that legal mail from an attorney of record or from a judge's chambers does not need to be specially marked in order to be handled as legal mail, Jervis simply stated that Plaintiff should pack up his things because he was being sent to the RHU.  (Id. at 4.)  Plaintiff was then brought before a disciplinary hearing officer on misconduct charges.  (Id.)  The filing of a false misconduct report can constitute an "adverse action" for a retaliation claim.  See Wilkerson v. Samuels, 524 F. App'x 776, 778 (3d Cir. 2013).  Thus, Plaintiff has stated a claim of retaliation against Officer Jervis.

### 6.      Officer Cole's Retaliation

Plaintiff next claims that Officer Cole retaliated against him for filing grievances by threatening to harm and kill him and by fabricating a misconduct report against him.  (Doc. No.

16

34 at 7.)  While the use of threats alone does not qualify as "adverse action" for the purposes of a

retaliation claim, see Burgos, 358 F. App'x at 306, the fabrication of a misconduct report does.

See Wilkerson, 524 F. App'x at 778.  Regarding this claim, Plaintiff alleges that, when Plaintiff

and others were protesting an unrelated issue regarding the LCP kitchen staff, Officer Cole

repeatedly stated that he had read Plaintiff's grievances and that Plaintiff was a "rat."  (Doc. No.

34 at 2-3.)  When Plaintiff stated that he only told on prison staff who violated his civil rights,

Cole told Plaintiff to "come downstairs and say it."  (Id. at 3.)  When Plaintiff began to do so,

Cole ordered him to "cuff up" and took him to the RHU.  (Id.)  When construed in the light most

favorable to Plaintiff, these allegations successfully state a retaliation claim against Officer Cole.

### 7.        Plaintiff's Motion for Leave to Supplement Will be Granted

Plaintiff's Proposed Supplemental Complaint contains several uncognizable claims as

well as some irrelevant factual material.  However, the pleading also contains three claims which

are facially cognizable and could potentially be meritorious: that Officer Jervis violated

Plaintiff's First Amendment rights by opening his legal mail outside of his presence; that Officer

Jervis retaliated against Plaintiff by fabricating a misconduct report against him; and that Officer

Cole retaliated against Plaintiff by threatening him and fabricating a misconduct report against

him.  Given these potentially meritorious claims, this court will grant Plaintiff's motion to

supplement the complaint.  However, pursuant to the screening requirements of the PLRA, see

28 U.S.C. § 1915A, all other claims within the supplemental complaint will be dismissed sua

sponte for failure to state a claim.

17

###### C.   Plaintiff's Motion for Joinder

Plaintiff moves for the "joinder" of this case with another case he (along with two other plaintiffs) has filed in this district: <u>Davis v. McMillan</u>, 1:14-cv-00024.  (Doc. No. 35).  Plaintiff cites Rule 20(a) of the Federal Rules of Civil Procedure as providing the authority for his request.  (<u>Id.</u> at 2.)  However, that rule allows for the joinder of separate persons as co-plaintiffs in an action, not the merging of separate cases.  <u>See</u> Fed. R. Civ. P. 20(a).  Plaintiff appears to actually request the consolidation of these two cases, which is authorized only if the two cases "involve a common question of law or fact."  Fed. R. Civ. P. 42(a); <u>see also</u> <u>In re Consol. Parlodel Litig.</u>, 182 F.R.D. 441, 44 (D. N.J. 1998).  Even where there are common issues of fact or law, consolidation is left to the discretion of the court, and should only be ordered where it would "facilitate the administration of justice."  <u>Waste Distillation Tech., Inc. v. Pan Am. Resources, Inc.</u>, 775 F.Supp. 759, 761 (D. Del. 1991) (citing <u>Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.</u>, 339 F.2d 673, 675 (3d Cir. 1964)).

The case with which Plaintiff seeks to have this case consolidated also concerns alleged retaliatory actions, but concerns a different set of operative facts and only contains one defendant in common.  <u>See</u> <u>Davis</u>, 1:14-cv-00024 at Doc. No. 1.  Given the difference in parties, facts, and procedural posture between these two cases, this court finds that consolidation would not facilitate the administration of justice and therefore will deny Plaintiff's motion.

#### IV.   <u>Conclusion</u>

For the reasons given above, Defendants' motion to dismiss will be denied as to Plaintiff's First Amendment claim regarding the opening of his legal mail outside of his presence

and granted as to all other claims in the original complaint.  Furthermore, Plaintiff's motion to supplement the complaint will be granted, but all claims against Warden McMillan, Assistant Warden Langan, Captain Yavorski, Lieutenant Murray, Disciplinary Hearing Officer Fanning, and Sergeant Fanning will be dismissed.

An appropriate order will issue.