UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

GARY WILLIAMS, :
    Plaintiff :
: No. 1:13-CV-00849
    v. :
: (Judge Kane)
LACKAWANNA COUNTY PRISON, :
et al., :
    Defendants :

## MEMORANDUM

Pro se Plaintiff Gary Williams, a prisoner formerly confined at the Lackawanna County Prison ("LCP"), filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on April 4, 2013. (Doc. No. 1.) Thereafter, Plaintiff filed a supplement to the complaint. (Doc. No. 34.) Currently pending before the Court is Defendants' motion for summary judgment (Doc. No. 50), to which Plaintiff has filed a brief in opposition (Doc. No. 55). The motion, having been fully briefed by the parties, is now ripe for disposition.

### I.    BACKGROUND

Plaintiff's complaint names as defendants the LCP, Warden Robert McMillan, Corrections Officer Laboronti, and Sergeant Hebron. (Doc. No. 1.) Plaintiff claims that prison officials at LCP opened his legal mail outside of his presence on several occasions. (Doc. No. 1 at 1.) He alleges that on December 5, 2012, he received a piece of opened legal mail from Defendant Laboronti for the fourth time in three weeks. (Id.) All letters were sent from the United States District Court and two of the envelopes were marked "Special Mail, Not to Be Opened Outside the Presence of the Inmate." (Id.) Plaintiff claims he spoke about this with Defendant Hebron, who said that Defendant Laboronti should not have opened the legal mail

outside of Plaintiff's presence. (Id.) Plaintiff also claims that he filed three grievances about this issue and that he received no response to any of them. (Id. at 2.)

Subsequently, on August 10, 2015, the Court issued a Memorandum and separate Order granting in part Defendants' motion to dismiss and permitting Plaintiff to file a supplemental complaint with respect to additional defendants Corrections Officers Jervis and Cole. With respect to the original complaint, the Court denied Defendants' motion to dismiss the portion of the complaint which set forth a First Amendment claim. The Court indicated that at that current stage of the proceedings, there were sufficient allegations of a pattern or practice of opening Plaintiff's legal mail to allow the claims against the four (4) defendants named in the original complaint to go forward. With regard to the supplemental complaint, the Court concluded similarly with respect to the additional defendant Corrections Officers Jervis and Cole. (Doc. Nos. 36 and 37.) However, all of the new claims set forth in the supplemental complaint against Warden McMillan, Assistant Warden Langan, Captain Yavorski, Lieutenant Murray, Disciplinary Hearing Officer Fanning and Sergeant Kennedy were dismissed. By Order of September 28, 2015, this Court dismissed the claims against LCP. (Doc. No. 39.) Therefore, the remaining defendants in this action are Warden McMillan, Sergeant Hebron, and Corrections Officers Laboranti, Jervis, and Cole.

In his supplemental complaint, Plaintiff alleges that on August 5, 2013, Defendant Cole verbally harassed him, removed him to the restricted housing unit ("RHU"), and issued him a misconduct, all in retaliation for Plaintiff filing grievances. (Doc. No. 34.) Plaintiff further alleges that Defendant Jervis opened his legal mail outside of his presence on August 13, 2014, and when confronted by Plaintiff as to why he opened the legal mail, Defendant Jervis sent him to the "hole." (Id.)

Defendants Jervis and Cole filed an answer and affirmative defenses to the supplemental complaint on August 25, 2015. (Doc. No. 38.) After being directed to do so, on October 9, 2015, an answer was filed to the original complaint by Warden McMillan, Corrections Officer Laboronti, and Sergeant Hebron relating to the First Amendment claim which survived the motion to dismiss. (Doc. No. 40.) After discovery was conducted, Defendants filed the instant motion for summary judgment. Accompanying their motion for summary judgment, Defendants filed a statement of undisputed material facts ("SUMF") (Doc. No. 51), and a brief in support (Doc. No. 52). Plaintiff filed an answer to Defendants' SUMF (Doc. No. 54),[1] and a brief in opposition to Defendants' instant motion (Doc. No. 55).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York

---

[1] Middle District of Pennsylvania Local Rules of Court provide that, in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . ., as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56.1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendants, all material facts set forth in Defendants' statement (Doc. No. 51), will be deemed admitted.

Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

## III. DISCUSSION

### A. First Amendment Claim – Interference with Legal Mail

The Supreme Court has made clear that prisoners do not surrender all constitutional rights during their confinement, and the Supreme Court has instructed that "federal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84 (1987). The Third Circuit has explained that prisoners "do not forfeit their First Amendment right to use of the mails," particularly with respect to privileged "legal mail" exchanged with counsel, and that a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech." Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995), abrogated in part by Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Taylor v. Oney, 196 F. App'x 126, 128 (3d Cir. 2006) (reaffirming holding in Bieregu that "prison officials impinge upon the First Amendment rights of prisoners when they open prisoners' legal mail outside the presence of the addressee prisoner").

In order to state a claim of this sort under the First Amendment, a prisoner must allege that the interference with his legal mail was done according to a "pattern and practice." Jones v. Brown, 461 F.3d 353, 359 (3d Cir. 2006) ("A state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech."). A prisoner may allege that actions were taken pursuant to a pattern or practice without the existence of a "blanket policy." See, e.g., Jones, 461 F.3d at 359 (distinguishing between a "pattern and practice" and an "explicit policy"). Prisoners need not allege or prove any "actual injury" beyond the direct injury to their First Amendment right to use the mails. Taylor, 196 F. App'x at 128.

Notably, courts have found that mere isolated incidents of opening legal mail outside of an inmate's presence, without evidence of an improper motive, is insufficient to establish a First Amendment violation. See, e.g., Nixon v. Sec'y Pa. Dep't of Corr., 501 F. App'x 176, 178 (3d Cir. 2012) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation."); Hale v. Pa Dept. of Corrections, No. 3:07-CV-0345, 2010 WL 3791833, at *3 (M.D. Pa. Sept. 16, 2010) ("[O]pening [court mail] outside [prisoner's] presence on two occasions . . . does not demonstrate a pattern or practice of improper handling of his legal mail sufficient to find a First Amendment violation . . . Isolated incidents of opening legal mail outside of an inmate's presence, without any evidence of improper motive, is nothing more than an assertion of negligence, and is insufficient to establish a constitutional violation."); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (finding that accidental opening of a single piece of legal mail did not give rise to a cognizable claim); Beese v. Liebe, 51 F. App'x 979, 981 (7th Cir. 2002) (dismissing First Amendment claim based on allegations that four pieces of legal mail had been opened outside of inmate's presence, since the inmate presented no evidence that his legal mail had been intentionally opened, and where the inmate-plaintiff merely speculated that the prison official intended to do so); Gardner v. Howard, 109 F.3d 427, 430-31 (8th Cir. 1997) (concluding that isolated and inadvertent mishandling of legal mail was not actionable); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990) (same).

In the original complaint, Plaintiff alleges that his mail was opened outside of his presence on four separate occasions within a period of three weeks. (Doc. No. 1 at 1.) Specifically, Plaintiff alleges that on December 5, 2012, Plaintiff was handed a legal letter from Defendant Laboranti that was opened outside of Plaintiff's presence. (Id.) In the supplemental

complaint, Plaintiff avers that on June 3, 2013, he was handed five legal letters by Correctional Officer Seabecher that were also opened and that had been withheld since May 20, 2013. (Doc. No. 34 at 2.)[2] Plaintiff further alleges that while he was in the RHU, his legal mail continued to be opened outside of his presence. (Id. at 3-4.)[3] Lastly, Plaintiff alleges that on August 13, 2014, Defendant Jervis handed him a legal mailing from the Court that was opened by Defendant Jervis outside of his presence. (Id. at 4.)

Defendants contend that there was no pattern and practice of intentionally opening Plaintiff's legal mail, but rather, in the few instances that it admittedly did happen, they were isolated and inadvertent events. (Doc. No. 52 at 7-8.) In support of this contention, Defendants provide the sworn affidavits of Defendants Laboranti and Jervis. In Defendant Laboranti's affidavit, he acknowledges that on December 5, 2013, he inadvertently opened a piece of legal mail outside the presence of Plaintiff, and when this was pointed out to him by Plaintiff, Defendant Laboranti apologized. (Doc. No. 51, Ex. "A" at ¶4.) Additionally, at Plaintiff's deposition, Plaintiff acknowledged that he assumed that Laboranti opened the other three letters because it was Laboranti that had delivered those letters to him. (Id. at ¶¶8, 9, 14.)

Similarly, in Defendant Jervis' affidavit, he provides that on October 14, 2014, he delivered three pieces of legal mail to Plaintiff. (Doc. No. 51, Ex. "B" at ¶5.) The first two were opened in the presence of Plaintiff; however, the third letter was opened by Jervis outside of Plaintiff's presence because "at the time it was not marked as legal mail." (Id.) Jervis further provides that this was the only isolated occurrence in which Plaintiff accused him of opening

---

[2] Plaintiff does not allege that Officer Seabecher opened his legal mail and Officer Seabecher is not a named defendant in this action.

[3] Plaintiff does not allege or identify an individual who purportedly opened his legal mail during this time frame.

legal mail outside of his presence. (Id.) This fact was acknowledged and confirmed by Plaintiff in his deposition. (Doc. No. 51 at ¶13.)

In employing the summary judgment standard, the Court finds that no genuine issue of material fact exists as to Plaintiff's First Amendment claims against Defendants Laboranti and Jervis. Defendants have satisfied their burden under Rule 56 by identifying evidence that demonstrates the absence of a genuine issue of material fact. Defendants not only provided the affidavits of Laboranti and Jervis, confirming the isolated nature of these events, but even more, they provided Plaintiff's own acknowledgement and confirmation via deposition testimony, that Laboranti and Jervis each opened a single piece of legal mail. Unintentionally opening legal mail outside of Plaintiff's presence on two occasions does not demonstrate a pattern or practice of improper handling of Plaintiff's legal mail sufficient to find a First Amendment violation. Hale, 2010 WL 3791833, at *3. These isolated incidents of opening Plaintiff's legal mail outside of his presence, without any evidence of improper motive, is insufficient to establish a constitutional violation.

Upon Defendants satisfying their burden, Plaintiff, as the nonmoving party, may not rest on the unsubstantiated allegations of his pleadings; rather, he is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex, 477 U.S. at 324. Plaintiff has not done so. Plaintiff's two affidavits from fellow inmates attached to his original complaint as Exhibits "A" and "B" do nothing more than confirm what Defendants do not dispute; that is, that Defendant Laboranti, on one occasion, acknowledged that he opened a legal mailing outside of Plaintiff's presence. (Doc. No. 1, Exhibits "A" and "B".) Similarly, Plaintiff's three affidavits from fellow inmates attached to his supplemental complaint at pages

13-15, also confirm what Defendants do not dispute; that is, that Defendant Jervis acknowledged that he opened a legal mailing outside of Plaintiff's presence on one occasion. (Doc. No. 34 at 13-15.) Accordingly, summary judgment will be granted in favor of Defendant Laboranti and Defendant Jervis as to the First Amendment claim.

### B. Respondeant Superior

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiff failed to produce any evidence of the personal involvement of Defendant Warden Robert McMillan and Defendant Sergeant Hebron in the opening of his legal mail. Accordingly, to the extent Plaintiff has brought a First Amendment claim against Defendant Warden Robert McMillan and Defendant Sergeant Hebron in connection with the opening of his legal mail, summary judgment will be granted in favor of Defendant Warden Robert McMillan and Defendant Sergeant Hebron. See Rode, 845 F.2d at 1207-08.

### C. Retaliation

Plaintiff alleges that Defendant Jervis fabricated a misconduct report against him in retaliation for Plaintiff's protesting of the opening of his legal mail outside of his presence. (Doc. No. 34 at 6-7.) Plaintiff alleges that when he explained to Officer Jervis that legal mail from any attorney of record or from a judge's chambers does not need to be specially marked in order to be handled as legal mail, Jervis simply stated that Plaintiff should pack up his things because he was being sent to the RHU. (Id. at 4.) Plaintiff attaches three affidavits to his supplemental complaint, which all support that Jervis handed Plaintiff an opened legal letter, but

do not provide with any specificity as to the words exchanged by Plaintiff and Jervis. (Doc. No. 34 at 13-15.)

Defendant Jervis, however, provides in his affidavit and in the misconduct report that when Jervis handed Plaintiff the legal letter, Plaintiff became extremely "belligerent" and began to use profanity towards him. (Doc. No. 51-3 at 6.) When told not to speak to him like that, Plaintiff continued to curse at him, even while Jervis turned away and left the block. (Id.) Jervis also attaches the August 13, 2014 misconduct report and the August 19, 2014 hearing report. (Id. at 6-7.) The hearing report, authored by Christina Oprishko, provides that Plaintiff confirmed that he used "swear words" towards Jervis. (Id. at 7.) The board found Plaintiff guilty of using abusive language towards staff and creating a disturbance. (Id.)

Plaintiff also alleges that Defendant Cole retaliated against him for filing grievances and threatening to harm and kill him and fabricated a misconduct report. (Doc. No. 34 at 2, 3, 7.) Specifically, on August 5, 2013, Plaintiff alleges that he told Defendant Cole to advise the kitchen staff to correct the food portions being served to the inmates. (Id. at 2.) Cole purportedly told Plaintiff that he was a rat for filing grievances and then ordered him to come downstairs from his cell. (Id.) When Plaintiff went into his cell and did not immediately go downstairs as directed by Cole, Cole went up to Plaintiff's cell and told him to "cuff up." (Id. at 2-3.) Plaintiff was then removed to RHU. (Id. at 3.)

The August 5, 2014 misconduct report authored by Cole provides that Cole was discussing an issue related to dinner trays with the inmates when Plaintiff, from the upper tier, began yelling and using profanity toward Cole. (Doc. No. 51-1 at 18.) When Cole ordered Plaintiff to come down from the upper tier, Plaintiff turned around and entered his cell. (Id.) Cole and Correctional Officer Shaheen then went up to Plaintiff's cell and ordered him to "cuff

up." (Id.) While observing Plaintiff's cell, the officers noticed that his blanket was torn and was covering his light fixture and that a sheet was torn and made into a pillow using the stuffing from his mattress. (Id.) Plaintiff pled guilty only to posting items to walls, lights, or fixtures, but the board found Plaintiff guilty on all charges. (Doc. No. 51-3 at 3.)

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." Id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." Id. (quoting Suppon v. Dadonna, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333-34 (quoting Mount Health Bd. Of Educ. v. Doyle, 429 U.S. 274 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005). Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. Krouse v. Am. Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

Once a plaintiff has made a prima facie case, the burden shifts to the defendant to prove by a preponderance of the evidence that even where a prisoner shows that the exercise of a constitutional right was a motivating factor in a contested decision, the prison official would

have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological purpose. Rauser, 241 F.3d at 334; Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002); Parker v. United States, 197 F. App'x 171, 175 (3d Cir. 2006) (affirming summary judgment in favor of prison officials who showed that same action would have been taken for legitimate penological purposes absent the alleged protected conduct); Sims v. Vaughn, 189 F. App'x 139, 141 (3d Cir. 2006) (same). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

The statement of undisputed material facts presented by the Defendants, which have been adopted by this Court, and which Plaintiff does not contest, establish that, irrespective of the temporal proximity of the misconduct reports filed by Defendant Jervis and Defendant Cole, Plaintiff would have been subjected to the charges brought forth against him even if he had not engaged in any constitutionally protected activity. Specifically, Defendants provide that Plaintiff had violated prison policies which are designed to foster order within the facility, and such actions by Defendants were consistent with the enforcement of reasonable penological objectives. (Doc. No. 51-1 at 14-15.) Moreover, the Court notes that Plaintiff admitted during his respective misconduct hearings that he was guilty of a certain number of the charges brought forth against him by the respective officers in those misconduct reports. (Doc. No. 51-3 at 3, 7.) Moreover, the misconduct hearings reveal that Plaintiff was found guilty on all charges. (Doc. No. 51-3 at 3, 7.) See Carter v. McGrady, 292 F.3d 152 (3d Cir. 2002); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (concluding that, because the finding of guilt in the inmate's disciplinary hearing was based on "some evidence," that finding "essentially checkmates his

retaliation claim"). Accordingly, summary judgment will be granted in favor of Defendant Jervis and Defendant Cole as to Plaintiff's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 50), will be granted. An appropriate Order follows.